## A92A0273. REID v. THE STATE.
(419 SE2d 321)

BEASLEY, Judge.

Reid appeals from a judgment of conviction and sentence entered for the offense of burglary, OCGA § 16-7-1, and from the denial of his motion for new trial.

A window had been broken at the Greene County Community Service Building and the offices occupied by the Health Department, the Veteran's Administration and the Director of the Senior Center had been ransacked. Approximately $300 in United States Treasury Bonds had been stolen from the VA office, $15 to $20 in change had been taken from a soft drink machine and a small amount of change had been taken from a cash box kept in the health office. Three latent fingerprints lifted from the cash box conclusively matched Reid's. He had been there a month earlier and had seen the cash box.

1. Appellant contends that the court erred in failing sua sponte to declare a mistrial when it learned that a member of the jury had served on the grand jury which returned the indictment, thus depriv-

ing him of his "constitutional rights."

No prospective juror responded when they were asked during voir dire whether anyone was a member of the grand jury which brought the indictment against appellant. Defendant (and the State) presumably did not notice that the name of "Willie D. Hobes" was on the indictment as a grand juror and was also on the list of jurors, both of which documents he had in advance of the voir dire. Nor was anything said when the panel was called and Hobes' name was read aloud.

Almost immediately after the jury retired for deliberations, it advised the court by note that a juror had indeed served on the grand jury. Defendant responded that the person could not continue on the jury. The court said it would bring in the alternate as a substitute and asked if there were any other ideas for a solution. None was offered, and defendant expressly stated he had no motions in this regard but that the grand juror could not serve. The court called the jury back out and explained why Mr. Hobes was disqualified and directed the alternate to take his place. The jury then retired, the court asked for objections, and none were raised. Appellant did not complain of the substitution until after the verdict, when he amended his motion for new trial.

" '[O]bjections to irregularities must ordinarily be made at a time when they may be remedied, or they are waived. (Cit.) (However, a) failure to object may be excusable . . .' State v. Williamson, 247 Ga. 685, 686 (279 SE2d 203) (1981). The question presented . . . is whether or not appellant failed to exercise due diligence." Thomas v. State, 249 Ga. 339, 340 (290 SE2d 462) (1982).

The first opportunity to object was when Hobes' name was called as a panel member. The proper time for objection and request for mistrial occurred when the jury notified the court of the participation of the grand juror. Appellant affirmatively agreed at that time to the substitution of the alternate, thus indicating satisfaction with the jury as composed. Unlike Thomas, where the participation of a grand juror on the trial jury did not become apparent until after the return of a guilty verdict infected by that participation, appellant learned of the irregularity at the latest when the remedial action demanded in the post-verdict motion could have been sought. Instead, he agreed to be tried by the jury with the substitute. He fails to show that what the court did, with his approval, constituted reversible error because a mistrial was mandated by law or that the grand juror's brief part in deliberations, if indeed he had any on the case itself, denied him a fair trial by an impartial jury. Thomas' verdict was returned by a jury whose members included the grand juror; appellant's did not. Cf. Evans v. State, 196 Ga. App. 1 (395 SE2d 342) (1990), where it also does not appear that a mistrial was requested when the irregularity was

discovered but it does not appear that defendant expressly agreed to the substitution, as here. As to the merits, the juror in *Evans* had expressed to the other jurors during deliberations that she knew defendant well enough for this to influence her decision and the foreman reported that it was interfering with her ability to arrive at a verdict. That is not the case with respect to appellant's grand juror. If there was a "presumption of prejudice" because the juror failed to respond properly during voir dire and sat briefly as a trial juror, it is overcome by the particular circumstances of this case. See *Motes v. State,* 192 Ga. App. 302, 303 (3) (384 SE2d 463) (1989).

2. It is further asserted that a new trial is mandated because the alternate juror who participated in the jury deliberations was appellant's first cousin and allegedly had improper information concerning the case.

During voir dire, the jury panel was asked "whether any of you are related by blood or marriage to the Defendant. . . That would be third cousins or closer. . . ." No response was heard.

The alternate juror was called as a witness during a hearing on appellant's motion for new trial. She disclosed that she and one of the State's trial witnesses had borne a child out of wedlock. It was established that the juror was not related to the child's father by blood or marriage. Appellant's counsel attempted to question the juror concerning her alleged familial relationship to his client, but the court prohibited such questioning.

OCGA § 15-12-135 (a) provides: "All trial jurors in the courts of this state shall be disqualified to act or serve in any case or matter when such jurors are related by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law."

If the juror was in fact the first cousin of appellant and therefore related within the prohibited degree, she would be disqualified to serve in the trial of the case. "But the mere fact that the juror was disqualified, standing alone, is not sufficient to require the grant of a new trial. The accused must go further and show that neither he nor his counsel had knowledge of such disqualification. If either had such knowledge and took the chance of being acquitted by the jury upon which this juror was serving, they could not then be heard to say that the juror was disqualified." *Williams v. State,* 206 Ga. 107, 109 (2) (55 SE2d 589) (1949). *Williams* places the burden on the defendant to establish lack of knowledge even where juror's relationship was known to the prosecutor.

"The disqualification of a juror . . . may be expressly or impliedly waived by a party having cause to complain, and if expressly or impliedly waived, it is conclusively presumed that no harm or benefit to either party resulted from the disqualification, and where it

appears that the party having cause to complain either knew of the relationship or could have discovered it by the timely exercise of ordinary diligence, and remained silent, that party will be presumed to have waived the disqualification. [Cit.] After verdict, an accused cannot obtain a new trial by reason of the fact that a juror is disqualified by relationship. . . , unless he can show that before the verdict he and his counsel did not know of the relationship, and could not have discovered it by the exercise of ordinary diligence. [Cit.]" *Brindle v. State,* 125 Ga. App. 298, 299 (1) (187 SE2d 310) (1972). Waiver in the present case is presumed.

3. Relying on *Brown v. State*, 180 Ga. App. 188 (348 SE2d 575) (1986), appellant contends that the state failed to prove to the exclusion of every reasonable hypothesis that his fingerprints on the cash box could only have been impressed when the crime was committed.

"A conviction based soley on fingerprint evidence is authorized where fingerprints corresponding to those of the accused are discovered at the crime scene and under circumstances disclosing they could only have been impressed at the time of the offense. [Cits.] The state's burden is to prove to the exclusion of every reasonable hypothesis that the fingerprints could only have been impressed when the crime was committed." *Brown,* supra at 188. The evidence established that appellant had been on the premises and purchased a birth certificate from the Health Department one month before the burglary. The State established that the cash box was routinely kept in a locked cabinet in an area unaccessible to the public and that even during a cash transaction, it was never positioned so that the public was given an opportunity to touch it. The only persons authorized to handle the box were the two office clerks. The State met its burden of establishing, to the exclusion of every reasonable hypothesis, appellant's lack of opportunity to leave the identified prints on another occasion.

As in *Brown*, supra at 189, "a trier of fact could reasonably infer that the print[s were] placed at the time of the burglary and there is no evidence to draw a contrary inference that the imprinting occurred on another occasion."

The evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the offense of burglary. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Collins v. State,* 176 Ga. App. 634 (1) (337 SE2d 415) (1985); *Prothro v. State,* 186 Ga. App. 836 (368 SE2d 793) (1988).

4. Appellant contends that the trial court erred in failing to conduct an evidentiary hearing in accordance with *Bearden v. Georgia*, 461 U. S. 660 (103 SC 2064, 76 LE2d 221) (1983) to pay a $5,000 fine.

Appellant was sentenced to 15 years, to serve 8 in confinement and the balance on probation. The fine was to be paid "monthly as

directed upon release from confinement." Clearly, probation was not conditioned upon the fine first being paid. A *Bearden* hearing is required only when the fine is made a condition precedent of probation or probation is about to be revoked for failure to pay the fine. *Massey v. Meadows*, 253 Ga. 389, 390 (321 SE2d 703) (1984). Neither condition is present here.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED MAY 7, 1992 —
RECONSIDERATION DENIED MAY 28, 1992 — ▌▌▌▌▌▌▌

*Robert E. Surrency*, for appellant.

*Joseph H. Briley, District Attorney, James L. Cline, Jr., Assistant District Attorney*, for appellee.