716 S.E.2d 768 (2011)
311 Ga. App. 660
In the Interest of H.A., a child.
No. A11A0828.
Court of Appeals of Georgia.
September 14, 2011.
Randee J. Waldman, for appellant.
Robert D. James Jr., Dist. Atty., Robert Harley Wilson, Asst. Dist. Atty., for appellee.
BLACKWELL, Judge.
A juvenile court adjudicated H.A. delinquent for committing acts that would, if he were an adult, amount to burglary in violation of OCGA § 16-7-1. The sole evidence that H.A. committed these acts is that his fingerprint was found on a bottle of tonic water that was moved during the burglary, and H.A. contends on appeal that this evidence is insufficient to sustain his adjudication of delinquency.[1] We disagree and affirm the judgment below.
*769 To prove that a juvenile is delinquent for committing acts of a criminal nature, the State must prove the commission of these acts beyond a reasonable doubt, just as it would in a criminal prosecution of an adult for the same acts. See In the Interest of A.A., 293 Ga.App. 827, 828, 668 S.E.2d 323 (2008). So, when a juvenile challenges the sufficiency of the evidence, we apply the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and we consider whether the evidence adduced at the hearing would permit a rational trier of fact to conclude beyond a reasonable doubt that the juvenile committed the acts with which he is charged. See A.A., 293 Ga.App. at 828, 668 S.E.2d 323; see also In the Interest of J.C., 308 Ga.App. 336, 337, 708 S.E.2d 1 (2011). In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the adjudication below, keeping in mind that it is for the trier of fact, not this Court, to weigh this evidence, resolve any conflicts in the evidence, and assess the credibility of witnesses. See A.A., 293 Ga.App. at 828, 668 S.E.2d 323; see also In the Interest of Q.S., 310 Ga.App. 70, 72(1), 712 S.E.2d 99 (2011).
So viewed, the evidence shows that a De-Kalb County resident went out to run errands on the morning of June 1, 2009, and when he returned to his home about 35 minutes later, he observed that the front door had been forcibly opened. Upon entering the home, he discovered that several items of personal propertytwo televisions, a laptop computer, a flat-screen computer monitor, a camera, and a satellite receiverwere missing. The victim also observed that a bottle of beer and a two-liter bottle of tonic water had been moved from the kitchen to another part of the house. A police officer later lifted a latent fingerprint from the bottle of tonic water, and it matched the fingerprint of 17-year-old H.A., whom the victim never had met.
The juvenile court concluded that H.A. must have participated in the burglary because, the court found, there was no other reasonable explanation for his fingerprint appearing on the bottle of tonic water. But H.A. contends that there is another explanation and that the failure of the evidence to exclude this alternative explanation means that his adjudication cannot be sustained. More specifically, H.A. claims that the evidence is consistent with the possibility that he impressed his fingerprint on the bottle while it was in the stream of commerce and before the resident of the home purchased the bottle. At the hearing below, his lawyer pressed this alternative explanation, arguing that "[a] water bottle stays in a house a remarkably short period of time and [is] in the public for a very long time before [it is] brought into the house. It is just as reasonable that the water bottle was touched while out in public...." But H.A. points to no evidence in the recordand our independent review of the record reveals nonethat supports the theory that H.A. might have left his fingerprint on the bottle prior to the break-in.
When an adjudication of delinquency is based solely on circumstantial evidence, like the adjudication in this case, the circumstantial evidence must "not only be consistent with guilt but [also must] exclude every other reasonable hypothesis save that of guilt of the accused." Rolling v. State, 275 Ga. App. 902, 905(1), 622 S.E.2d 102 (2005) (citation omitted). But not every hypothesis is a reasonable one, and it is only reasonable *770 hypotheses that must be excluded. See id. A reasonable hypothesis is one raised by the evidence, see Cornish v. State, 187 Ga.App. 140, 142, 369 S.E.2d 515 (1988), and whether an alternative hypothesis is "reasonable" is a question committed largely to the trier of fact. See Rolling, 275 Ga.App. at 905(1), 622 S.E.2d 102.
In prior cases, our Supreme Court has considered and rejected claims that a conviction cannot be based solely on the presence of the defendant's fingerprint on some consumer product in a private place in which a crime is committed. For instance, in Leonard v. State, 269 Ga. 867, 506 S.E.2d 853 (1998), the defendant was convicted of murder based on evidence that his fingerprints were found on a beer bottle and soft-drink bottle that, it appeared, had been moved at the time of the crime. The Supreme Court accepted that this fingerprint evidence was the sole evidence linking the defendant to the crime, id. at 868(1), 506 S.E.2d 853, but it nevertheless affirmed the conviction. In its decision, the Supreme Court did not discuss the conjectural possibility that some person might have touched and impressed his fingerprints upon the bottles when they were in the stream of commerce, but it instead focused on the absence of any actual evidence that the defendant in that case had an opportunity to leave his fingerprint on the bottles except at the time of the crime: "The evidence suggests no occasion for [the defendant] to have left his fingerprints [on the bottles] except during the crime, and the evidence authorized the jury to conclude that every reasonable hypothesis was excluded except [his] guilt." Id. at 868-869(1), 506 S.E.2d 853.
Similarly, in White v. State, 253 Ga. 106, 317 S.E.2d 196 (1984), the defendant was convicted of murder based on evidence that his fingerprint was found on a cosmetic case in the bedroom of the victim, which had been ransacked during the crime. Id. at 107(1), 317 S.E.2d 196. As in Leonard, the Supreme Court accepted the claim that this fingerprint evidence was the sole evidence linking the defendant to the crime, see id., and as in Leonard, it nevertheless affirmed the conviction. In White, the Supreme Court did not discuss the possibility that the cosmetic caselike the bottles in Leonard and the bottle of tonic water in this casemight have once been kept on a store shelf accessible to the public, but it concluded that nothing in the evidence supported an alternative hypothesis that explained how the fingerprint of the defendant was left on the cosmetic case. Id. at 108(1), 317 S.E.2d 196. Consequently, the Supreme Court concluded, a rational jury could have found that the only reasonable explanation was that the defendant left his fingerprint on the cosmetic case at the time of the murder. Id.
This Court also has considered in several cases whether fingerprint evidence is enough to sustain a conviction, and we have reached the same conclusion as the Supreme Court in Leonard and White. For instance, in Massey v. State, 247 Ga.App. 827, 827(1), 545 S.E.2d 66 (2001), we considered evidence of fingerprints found on empty soda cans and a bag of cheese in the apartment of a burglary victim, and we said that the fingerprint evidence directly placed the defendant at the scene of the crime, amounted to "compelling circumstantial evidence" that he stole the items on which his fingerprints were found, and constituted sufficient circumstantial evidence from which a jury could infer that the defendant also took the other items stolen from the apartment. Id. at 828, 545 S.E.2d 66; see also Lighten v. State, 259 Ga.App. 280, 282(1), 576 S.E.2d 658 (2003) (upholding conviction for burglary where evidence provided no support for defendant's alternative hypothesis about how his fingerprints were left on a drink bottle found at the crime scene); Brown v. State, 180 Ga.App. 188, 189, 348 S.E.2d 575 (1986) ("trier of fact could reasonably infer that the print was placed at the time of the burglary[,] and there is no evidence to draw a contrary inference that the imprinting occurred on another occasion"); Garland v. State, 160 Ga.App. 97, 98(2), 286 S.E.2d 330 (1981) (upholding conviction based on fingerprint evidence where "[t]here was no evidence presenting any other reasonable explanation" for presence of defendant's prints at scene of crime). As the Supreme Court did in Leonard and White, we focused in these cases on the extent to which an alternative explanation was raised *771 by the evidence, rather than by mere conjecture.
Here, the alternative hypothesis that H.A. offersthat perhaps he left his fingerprint on the bottle while it was in the stream of commercefinds no support in the evidence adduced below. To be sure, the idea that the bottle on which H.A.'s fingerprint was found might have come from the shelf of some store, where a shopper might innocently have touched it and left his fingerprint upon it, is not a crazy one. But the bottle did not necessarily come from a store; perhaps the resident bought it online, directly from the manufacturer, or from a wholesaler. And in any event, there is simply no evidence that supports this alternative explanation for the fingerprint.
At trial, H.A. focused his defense not on presenting an alternative explanation for his fingerprint being found in the victim's home, but rather on challenging the qualifications and methods of the fingerprint expert who testified at the hearing. Even when H.A. advanced his alternative hypothesis in closing argument, he made claims that are not supported by any evidence contained in the record; the record contains no evidence that a bottle of tonic water "stays in a house a remarkably short period" or that it is "in the public for a very long time before [it is] brought into the house." And even if the record showed that the victim purchased the tonic water from a retail store, there is no evidence in the record about when or where the victim made the purchase, evidence that H.A. ever had visited that store, or even evidence that H.A. had ever drank, purchased, or handled a bottle of tonic water. Although a court can use its common sense to determine whether an alternative hypothesis is "reasonable," we do not find that the juvenile court was required as a matter of law to accept the alternative explanation that H.A. offered in the absence of evidence to support it. Indeed, to accept H.A.'s alternative hypothesis on appeal, we would have to speculate about matters that are not part of the record before us, and that is something that this Court ought not do. See Calhoun v. State, 71 Ga.App. 623, 626, 31 S.E.2d 616 (1944); see also Cornish, 187 Ga.App. at 142 (alternative hypothesis must be established by the evidence).[2]
The case on which H.A. reliesAnthony v. State, 85 Ga.App. 119, 68 S.E.2d 150 (1951) is simply not much like this case. In Anthony, this Court reversed a burglary conviction based solely on evidence of the fingerprint of the defendant at the crime scene because the fingerprint there was found on a pinball machine used by the public in a public place. Here, H.A.'s fingerprint was discovered inside a private residence and not in a public place, much less on a device that is intended to be regularly used and touched by the public as in Anthony. Nor does the evidence here suggest any occasion for H.A. to have lawfully entered the victim's residence or to have handled the bottle of water before it came into the victim's home. See White, 253 Ga. at 108(1), 317 S.E.2d 196; compare Vaughn v. State, 136 Ga.App. 54, 54-55, 220 S.E.2d 66 (1975) (fingerprint evidence insufficient to sustain burglary conviction where evidence showed that defendant was taken to the crime scene before fingerprint evidence was collected); Mooney v. State, 122 Ga.App. 650, 178 S.E.2d 281 (1970) (fingerprint evidence insufficient to sustain burglary conviction where evidence showed that defendant recently and lawfully handled the item on which his fingerprint was found).[3]
*772 H.A.'s unsupported alternative hypothesisthat he left his fingerprint on the bottle of tonic water before the bottle was removed from the stream of commerce to the home that was burglarizedis not one that the court below was required as a matter of law to accept as reasonable. Neither the evidence nor the reasonable deductions therefrom provides any support for the alternative hypothesis. And where there is no evidence explaining how a defendant's fingerprint came to be found at the crime scene, especially when it was found on an item that appears to have been moved during the commission of the crime, the finder of fact properly may conclude that the only reasonable explanation for the presence of the fingerprint is that it was impressed when the crime was committed. Rivers v. State, 271 Ga. 115, 116(1), 516 S.E.2d 525 (1999). While we do not doubt that the evidence in some other case might support a similar alternative hypothesis and require a different outcome, the lack of evidentiary support for the alternative hypothesis in this case leads us to conclude that the alternative explanation raised by H.A. is no more than a "mere possibility" and that its rejection by the trier of fact is not "unsupportable as a matter of law." Rolling, 275 Ga.App. at 905, 622 S.E.2d 102; In the Interest of Q.P., 286 Ga.App. 225, 226, 648 S.E.2d 731 (2007). The evidence adduced below is sufficient to support the adjudication of delinquency.
Judgment affirmed.
BARNES, P.J., and ADAMS, J., concur.
NOTES
[1] H.A. also contends that the juvenile court erred when it admitted a fingerprint card as evidence and when it limited his cross-examination of an expert witness, but neither of these contentions has any merit or warrants much discussion. The fingerprint card was properly authenticated by a police officer who was present when the fingerprint card was made and actually saw H.A.'s fingers pressed upon the card. See Thomas v. State, 166 Ga.App. 559, 560, 305 S.E.2d 151 (1983) ("[T]he quantum of evidence required sufficiently to identify items of evidence ... as true and accurate representations of what they purport to depict, and thus render them admissible, is a matter left within the discretion of the trial court."). And although the juvenile court did limit H.A. in his efforts to cross-examine the fingerprint expert about the faulty fingerprint analysis in the Madrid bombing case, it permitted H.A. to cross-examine the expert about the possibility of mistakes in fingerprint analysis, and the expert acknowledged her awareness of other cases in which faulty fingerprint analysis led to misidentifications. We do not think the juvenile court was required to permit in-depth cross-examination on the Madrid bombing case. See Hudson v. State, 137 Ga.App. 439, 440, 224 S.E.2d 48 (1976) (trial court has discretion "to keep the questioning within reasonable bounds").
[2] Moreover, even if the evidence presented at trial offered some support for H.A.'s alternative hypothesis, whether it is a reasonable hypothesis and not a "mere possibility" is for the factfinder to determine, not this Court. In the Interest of Q.P., 286 Ga.App. 225, 226, 648 S.E.2d 731 (2007); Baxter v. State, 211 Ga.App. 650, 650(1), 440 S.E.2d 72 (1994). "This of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of the [finder of fact]." Harris v. State, 236 Ga. 242, 244(1), 223 S.E.2d 643 (1976). We will only reverse the decision of the finder of fact regarding the reasonableness of an alternative hypothesis if "there appears a hypothesis ... pointing to the innocence of the accused, and which tested by all human experience is a reasonable one, [so that we] may declare it [reasonable] as a matter of law." Id. at 245(1), 223 S.E.2d 643.
[3] We are aware that courts in some other jurisdictions require, where a fingerprint is left on a movable object, proof that the object was inaccessible to the defendant during the time it was in the stream of commerce. See Washington v. Bridge, 1998 Wash.App. LEXIS 1169 (1998); see also Mikes v. Borg, 947 F.2d 353, 357-358 (9th Cir.1991); United States v. Corso, 439 F.2d 956, 957 (4th Cir.1971); United States v. Jones, 433 F.2d 1107, 1109, n. 10 (D.C.Cir.1970). H.A. points to no case, and we can find none, in which this standard was applied in Georgia. Whatever the merits of this standard, we think Leonard and White compel us to affirm the adjudication in this case.