**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**January 4, 2019**

# In the Court of Appeals of Georgia

A18A1851. IN THE INTEREST OF S. B., a child.

McFADDEN, Presiding Judge.

After his palm prints were found at the scenes of two burglaries, then-13-year-old S. B. was adjudicated delinquent for acts that, if committed by an adult, would constitute the offenses of burglary and attempted burglary. He appeals, challenging the sufficiency of the evidence supporting the adjudications and arguing, based on comments made by the juvenile court at the adjudicatory hearing, that the juvenile court adjudicated him delinquent for acts not alleged in the delinquency petitions. Because the evidence was sufficient and the juvenile court's written orders indicated that S. B. was adjudicated delinquent for the acts alleged in the petitions, we affirm.

1. *Sufficiency of the evidence.*

S. B. challenges the sufficiency of the evidence supporting his adjudications of delinquency. In considering this challenge, "we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication[s] to

determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged." *In the Interest of J. D.*, 275 Ga. App. 147, 147-148 (619 SE2d 818) (2005) (citations omitted).

So construed, the evidence showed that in the early afternoon on November 30, 2017, a house on Ellis Street was burglarized. Two video gaming systems, numerous video games, video game controllers, and other electronics were taken. It appeared to the investigating officers that the burglar had entered through a kitchen window at the rear of the house, and the officers found S. B.'s palm prints on the outside of the bottom lower window pane of that window. The resident of the house testified that she did not know S. B., did not give S. B. permission to be inside her house, and did not know why his palm prints would have been on her kitchen window.

The following week, in the early afternoon on December 4, 2017, a house on Cleburne Street was burglarized. The back door was kicked in, a bedroom was ransacked, and numerous items were taken from the house, including video gaming systems and video games. Screens had been cut out of three windows at the back of the house, and it appeared to an investigating officer that someone had tried to open those windows. Officers found S. B.'s palm prints on the outside of the windows. The resident of the house knew S. B., who went to school with one of her children.

2

Although S. B. had spent time at the house in the past, in March 2017 the resident had forbidden him from her house, and he did not have permission to be there on December 4, 2017.

In connection with both of these incidents, the state filed delinquency petitions alleging that S. B. had committed acts that, if committed by an adult, would constitute the offense of burglary in the first degree. The juvenile court adjudicated S. B. delinquent for acts constituting the offense of first-degree burglary in connection with the Cleburne Street house and for acts constituting the offense of criminal attempt to commit first-degree burglary in connection with the Ellis Street house.

Pertinently, "[a] person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters . . . an occupied, unoccupied or vacant dwelling house of another[.]" OCGA § 16-7-1 (b). "A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. Moreover, "[a] person charged with commission of a crime may be convicted of the offense of criminal attempt as to that crime without being specifically charged with the criminal attempt in the [charging document]," OCGA § 16-4-3, and "[a] person may be convicted of

3

the offense of criminal attempt if the crime attempted was actually committed in pursuance of the attempt[.]" OCGA § 16-4-2.

S. B. argues that the evidence was insufficient to support his delinquency adjudications because the palm-print evidence was the sole evidence of his involvement in the burglaries but the state did not show that his palm prints were impressed on the windows of the burgled houses at the time of the burglaries. He also argues that there was a reasonable explanation for the presence of his palm prints on the windows and he argues that the evidence supported other reasonable hypotheses inconsistent with his having committed the acts alleged. We are not persuaded.

Fingerprint evidence is a form of circumstantial evidence. See *Harris v. State*, 298 Ga. 588, 593 (4) (783 SE2d 632) (2016). "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. So "when fingerprint evidence is the only evidence linking a defendant to the crimes on trial, the [s]tate must prove to the exclusion of other reasonable hypotheses that the fingerprints could have been impressed only at the time of the commission of the crimes." *Roberts v. State*, 296 Ga. 719, 721 (1) (770 SE2d 589) (2015) (citations omitted). It is for the juvenile court,

4

as factfinder, to decide whether the totality of the evidence supported a reasonable hypothesis other than the hypothesis that the fingerprints were impressed at the time of the burglaries. See *White v. State*, 253 Ga. 106, 107 (1) (317 SE2d 196) (1984); *In the Interest of H. A.*, 311 Ga. App. 660, 662 (716 SE2d 768) (2011).

The state argues that the palm-print evidence was not the only evidence supporting the adjudications of delinquency. But even if we view the palm-print evidence to be the only evidence supporting the adjudications, it was sufficient. From the circumstances surrounding the presence of S. B.'s palm prints at the scenes of the burglaries, the juvenile court could conclude that "the only reasonable explanation [was] that they were impressed during the commission of the crimes." *Roberts*, 296 Ga. at 722 (1) (citation omitted).

As to the Ellis Street house, S. B.'s palm prints were found on the window through which the burglar gained entry. Although S. B. "testified that he had left his [ ]prints [on] the window during an earlier attempted burglary[, t]he [juvenile court] was not required to believe that the [ ]prints had been left at the earlier time but was authorized to find that [S. B.'s] explanation was evidence of his commission of the instant burglary." *Moore v. State*, 189 Ga. App. 810, 811 (377 SE2d 897) (1989). See *Moon v. State*, 187 Ga. App. 558, 558-559 (370 SE2d 808) (1988) (affirming burglary

5

conviction where defendant's fingerprints were on window through which entry was gained to residence and there was no evidence presenting any other reasonable explanation of how they came to be there than that they were impressed on window at time of burglary).

As to the Cleburne Street house, S. B.'s palm prints were also found on exterior windows. Although there was evidence that he previously had visited that house with the resident's permission, that had occurred more than six months before the December 4 burglary. Since that time, the exterior of the house had been pressure-washed. See *In the Interest of J. D.*, 275 Ga. App. at 149 (1) (state met burden of excluding every reasonable hypothesis except that defendant's fingerprints were impressed during burglary by, among other things, presenting evidence that victim regularly washed kitchen window on which defendant's prints were found). Moreover, there was no evidence regarding or explanation for how S. B.'s prints came to be on the *outside* of windows from which the screens had been cut, and the juvenile court was authorized to conclude that — notwithstanding S. B.'s earlier visits to the house — the only reasonable explanation for the presence of the prints in that specific location was that they were impressed there during the commission of the crime. See *Roberts*, 296 Ga. at 722-723 (1) (holding that circumstances

6

surrounding presence of defendant's fingerprints at crime scene led "to the only reasonable explanation that they were impressed during commission of the crimes," despite evidence that defendant had been at scene for innocent reasons on other occasions) (citation omitted); *In the Interest of J. D.*, supra at 149 (1) (evidence that defendant had been in victim's house once and may have been in living room "does not provide an innocent explanation for the presence of his prints on the exterior and interior of the rear kitchen window").

S. B. argues that other evidence shows that he was not the perpetrator. He points to evidence that he was either in school or at home with his mother when the burglaries occurred — primarily his own testimony and that of his mother but also evidence that his school did not mark him absent on those days. He also points to evidence that other persons were seen in the vicinity of the houses when the burglaries occurred. But as stated above, it was for the juvenile court as factfinder to assess this evidence and determine whether the state had excluded every reasonable theory other than S. B.'s guilt. *White*, 253 Ga. at 107; *In the Interest of H. A.*, 311 Ga. App. at 662. Because the evidence supported a conclusion that the only reasonable hypothesis was that the palm prints were impressed at the time of the burglaries, the evidence was sufficient to adjudicate S. B. delinquent for those acts.

2. *Juvenile court's comments at adjudicatory hearing.*

In his reply brief, S. B. argues that the juvenile court erred by "adjudicat[ing him] delinquent for acts wholly different and separate than that alleged in the delinquency petitions." The rule forbidding a "fatal variance" between the language of the charging document and the proof at trial applies to juvenile delinquency proceedings. See *In the Interest of S. C. P.*, 320 Ga. App. 166, 167 (739 SE2d 474) (2013). Pretermitting whether S. B. waived this contention by failing to specifically enumerate it as error in his initial appellate brief, but see *Lebis v. State*, 302 Ga. 750, 759-760 (II) (A) (808 SE2d 724) (2017) (considering on appeal whether there was fatal variance, even though appellant couched claim of error as challenge to sufficiency of evidence), we find no merit in the argument.

S. B. argues the juvenile court made comments at the adjudicatory hearing indicating that she based her adjudications, at least in part, on S. B.'s admitted presence at both houses at times other than the dates when the burglaries occurred, as alleged in the delinquency petitions. But

> [t]he juvenile court's statement[s] in court [are] of no legal significance. A trial court's oral pronouncement is not a judgment until it is put in writing and entered as the judgment. Although a trial court's oral pronouncements on the record may provide insight of [her] subsequent

8

written judgment, discrepancies between the [oral and written] pronouncements must be resolved in favor of the written judgment.

*In the Interest of L. H.*, 242 Ga. App. 659, 660 (2) (530 SE2d 753) (2000) (citations omitted). In her written orders adjudicating S. B. delinquent, the juvenile court stated that she "found that the allegations of the petition [were] true . . . , that the acts attributed to [S. B.] were, in fact, committed by [him], and that such acts constitute[d] acts of delinquency." To the extent that her comments during the hearing reflect a different factual basis for her adjudications, we look to the written judgments, which reflect that the juvenile court based her adjudications on the facts alleged in the delinquency petitions.

*Judgment affirmed. Rickman and Markle, JJ., concur*.